IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| HARVARD S. BRENNER,<br><br>                    Plaintiff,<br>v.<br><br>UAW-LABOR EMPLOYMENT AND<br>TRAINING CORPORATION, a/k/a and<br>UAW-LABOR EMPLOYMENT &<br>TRAINING CORP.; DOES 1 through 50,<br>inclusive,<br><br>                    Defendants. | **MEMORANDUM DECISION AND<br>ORDER GRANTING MOTION FOR<br>PARTIAL SUMMARY JUDGMENT**<br><br>Case No. 2:14-cv-00697-DN<br><br>District Judge David Nuffer |

Defendant UAW-Labor and Employment Training Corporation ("Defendant" or "UAW-LETC") filed a motion for partial summary judgment[1] ("Motion") requesting dismissal of all but one of Plaintiff Harvard S. Brenner's ("Mr. Brenner") legal theories in the claims in his complaint.[2] Mr. Brenner alleges the following legal theories: (1) age discrimination under the Age Discrimination in Employment Act[3] ("ADEA"); (2) retaliation under the ADEA; (3) age discrimination under the Utah Anti-Discrimination Act[4] ("UADA"); (4) wrongful termination in violation of public policy; (5) breach of contract; and (6) breach of the implied covenant of good faith and fair dealing. Defendant acknowledges that there are disputed material issues of fact regarding Mr. Brenner's ADEA age discrimination claim, and therefore Defendant does not seek summary judgment on this claim. Defendant, however, does request summary judgment on the

---

[1] Defendant UAW-LETC's Motion for Partial Summary Judgment; Memorandum of Points and Authorities in Support thereof ("Motion"), docket no. 31, filed September 30, 2015.

[2] Complaint, docket no. 2, filed September 26, 2014.

[3] 29 U.S.C. §§ 621 *et seq.*

[4] Utah Code § 34A-5-101 *et seq.*

remaining five legal theories, as well as summary judgment on Plaintiff's claims for punitive and

compensatory damages. Mr. Brenner, in his opposition memorandum, concedes that summary

judgment is appropriate on his age discrimination claim under the Utah Anti-Discrimination Act

and on his claim for wrongful termination in violation of public policy.[5] Mr. Brenner, however,

contends that there are triable issues of material fact on his remaining legal theories of retaliation

under the ADEA; breach of contract; and breach of the implied covenant of good faith and fair

dealing.

After a careful review of the written memoranda submitted by the parties, oral argument

is unnecessary since the Motion may be readily decided on the written submissions.[6]

UNDISPUTED FACTS ........................................................................................................... 3
    *Retaliation under ADEA* ............................................................................................ 3
    *Breach of Contract Based on Alleged Promise of Lifetime Employment* .......................... 5
    *Breach of Contract Based on Alleged Promise of Face-to-Face Meeting* ........................ 6
STANDARD FOR SUMMARY JUDGMENT ........................................................................ 7
DISCUSSION ........................................................................................................................ 8
    1.    Mr. Brenner's Retaliation Claim Fails ................................................................. 8
    2.    Mr. Brenner's Breach of Contract Based on Alleged Promise of Lifetime
        Employment Fails ...................................................................................... 11
        a.    *Mr. Brenner's express contract claim fails as a matter of law* ............... 11
        b.    *Mr. Brenner's implied contract claim fails as a matter of law* ............... 14
    3.    Mr. Brenner's Breach of the Contract based on a Promise to Meet Face to Face
        Fails ............................................................................................................ 18
    4.    Mr. Brenner's Breach of the Implied Covenant of Good Faith and Fair Dealing
        Claim Fails .................................................................................................. 19
    5.    Punitive and Compensatory Damages are Unavailable under the ADEA ............ 19
CONCLUSION .................................................................................................................... 21

---

[5] Memorandum in Opposition to Defendant's Motion [31] for Partial Summary Judgment (with Exhibits 1–11) at 31 ("Opposition"), docket no. 39, filed November 6, 2015.

[6] *See* DUCivR 7–1(f).

## UNDISPUTED FACTS

The following facts are taken largely from Defendant's Motion.[7]  These facts are undisputed based on Mr. Brenner's express admission of Defendant's proposed undisputed facts, or because Mr. Brenner's offered evidence does not actually dispute Defendant's properly supported fact.[8]  Most of Mr. Brenner's additional facts are disregarded because they consist primarily of arguments or conclusions couched as factual assertions.

### *Retaliation under ADEA*

1.       On July 4, 2012, Brenner was expressly accused (falsely), including in writing, of not being beneficial to the UAW-LETC students or staff if he remained in his position "because of his age."[9]

2.       Such (false) accusations about Brenner were also contained in and disseminated with correspondence dated July 4, 2012 from a Les Brown, an Instructor at the Clearfield Job Corps Center ("CJCC") where Brenner was the Director, sent to the United States Department of Labor in Washington, D.C., including to the then-United States Secretary of Labor, Hilda L. Solis, Executive Secretariat, and to Edna Primrose, the then-National Director for the office of Jobs Corps, as well as to others, including persons under the United States Department of Labor's Employment and training Administration (ETA"), and within UAW-LETC.[10]

3.       In or about June 2013, . . . another letter was written anonymously by certain staff members at the CJCC to UAW-LETC [regarding Mr. Brenner].[11]

---

[7] Motion at 5–11.

[8] *See* Fed. R. Civ. P. 56(e)(2) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[.]").

[9] Opposition at 11; Reply at 8–9 (undisputed).

[10] Opposition at 11; Reply at 9 (undisputed).

[11] Opposition at 11; Reply at 9 (this fact has been edited to remove the argument "in furtherance of the efforts to get rid of Brenner because of his age").

4.       On August 28, 2013, UAW-LETC's President, Bruce Lee, visited UAW-LETC's facility in Clearfield, Utah, of which Plaintiff was the Director.[12]

5.       While in the Clearfield office on August 28, 2013, Lee held a staff meeting with the Clearfield staff ("Lee's Staff Meeting"). Lee directed Plaintiff not to attend Lee's Staff Meeting [stating to Mr. Brenner that his "presence might inhibit what they had to say about him."].[13]

6.       Plaintiff asked his secretary, Lisa Johnson, who attended Lee's Staff Meeting, to [tell him] what had transpired at that meeting.[14]

7.       Lee learned that Plaintiff had asked his secretary for information about Lee's Staff Meeting. Plaintiff alleges Lee said it was 'underhanded' for Plaintiff to have done this because Plaintiff knew or should have known that Lee did not want Plaintiff to know what was said at Lee's Staff Meeting.[15]

8.       Lee directed Plaintiff to go home from the office until further notice. Lee stated that he was sending Plaintiff home because he [Lee] was angry that Plaintiff asked his secretary to [tell him] about Lee's Staff Meeting.[16]

---

[12] Motion at 5; Opposition at 9 (undisputed).

[13] Motion at 5; Opposition at 9 (Mr. Brenner attempts to dispute this fact, but the evidence Mr. Brenner cites provides speculation of Mr. Lee's motive for excluding Mr. Brenner from the Staff Meeting. This fact has been edited to only contain the reason Mr. Lee provided Mr. Brenner for excluding him from the staff meeting. *See* Harvard S. Brenner Deposition at 126–127, attached as Exhibit A in Appendix to Evidence, docket no. 32-1, filed September 30, 2015).

[14] Motion at 5; Opposition at 9–10 (this fact has been edited to remove Mr. Brenner's dispute with the word "report").

[15] Motion at 5; Opposition at 10 (undisputed).

[16] Motion at 5–6; Opposition at 10 (this fact has been edited to remove Mr. Brenner's dispute with the word "report").

9.      On or about August 29, 2013, Brenner voiced and raised specific concerns (complaints) to Lee . . . including his being excluded from the meeting, his authority being taken away, and also his objections about his being suspended and sent home by Lee.[17]

10.      Plaintiff did not mention discrimination or age when he expressed these concerns to Lee.[18]

### Breach of Contract Based on Alleged Promise of Lifetime Employment

11.      At no point during his employment with UAW-LETC did Plaintiff have a written employment contract with UAW-LETC.[19]

12.      Plaintiff's allegations of an implied employment contract are based solely on: (1) UAW-LETC President Bruce Lee's alleged statement to Plaintiff in the mid-1970s that Plaintiff would have a "job for life"; (2) Lee allegedly telling Plaintiff on other unspecified occasions that Plaintiff could stay at UAW-LETC as long as Plaintiff wanted; (3) two other members of UAW-LETC management allegedly saying "fine" and "good" in response to Plaintiff's statements that he intended to work as long as he was able; and (4) Plaintiff being listed as a "key employee" on UAW-LETC's contract with the Department of Labor.[20]

---

[17] Opposition at 13; Reply at 13 (this fact has been edited to remove the reference to discrimination in order to make the fact consistent with Mr. Brenner's deposition testimony. *See* Harvard S. Brenner Deposition at 186, attached as Exhibit A in Appendix to Evidence, docket no. 32-1, filed September 30, 2015).

[18] Motion at 6; Opposition at 13 (Although Mr. Brenner states he objects to this fact, he later concedes this fact in his additional facts).

[19] Motion at 8; Opposition at 17 (Mr. Brenner's attempt to dispute this fact by asserting that he had an "express written and third-party beneficiary contract" pursuant to the UAW-LETC's contract with the Department of Labor fails for the reasons set forth in Section 2(a) below).

[20] Motion at 8; Opposition at 18 (Mr. Brenner does not dispute the list of allegations above, but contends that there are other instances that form his implied employment contract, these include: "Brenner's leaving employment, his longevity of employment over 38 years, commendations, promotions, numerous position, statements to him, promises of no interference in Clearfield CJCC, practices of Lee and UAW-LETC, conversations with other executives and officers." For the reasons set forth in Section 2(b) below, none of these instances rise to the level of an implied contract).

13.     On or about April 5, 1995, Plaintiff signed an acknowledgment of receipt of UAW-LETC's personnel manual. At the time Plaintiff signed this document, UAW-LETC's personnel manual contained language stating that employment with UAW-LETC was at-will.[21]

14.     On or about May 9, 1997, Plaintiff signed an acknowledgment of receipt of UAW-LETC's personnel manual. At the time Plaintiff signed this document, UAW-LETC's personnel manual contained language stating that employment with UAW-LETC was at-will.[22]

15.     On or about November 14, 2000, Plaintiff signed an acknowledgment of receipt of UAW-LETC's personnel manual. At the time Plaintiff signed this document, UAW-LETC's personnel manual contained the following language: "Employment with this company is on an 'at-will' basis. This means that either the employee or the company may terminate the employment relationship at any time for any reason, with or without cause."[23]

***Breach of Contract Based on Alleged Promise of Face-to-Face Meeting***

16.     Plaintiff alleges that on November 8, 2013, Lee "mentioned" to Plaintiff that Lee would like to move Plaintiff into another program, other than UAW-LETC's program in Clearfield, Utah. Plaintiff allegedly asked Lee what he had in mind, and Lee said "I don't know; I have to talk to [UAW-LETC Vice President] Philip Tan to see what's available." Plaintiff further alleges he told Lee during this conversation that he [Plaintiff] wanted to remain in Clearfield.[24]

---

[21] Motion at 9; Opposition at 19 (Mr. Brenner does not dispute that he signed the acknowledgment of receipt which contained language stating that employment with UAW-LETC was at-will).

[22] *Id.* (Mr. Brenner does not dispute that he signed the acknowledgment of receipt which contained language stating that employment with UAW-LETC was at-will).

[23] Motion at 9; Opposition at 19–20 (Mr. Brenner does not dispute that he signed the acknowledgment of receipt which contained language stating that employment with UAW-LETC was at-will).

[24] Motion at 10; Opposition at 23–24 (undisputed).

17.     Plaintiff alleges that later that same day, Plaintiff asked Lee if Lee had contacted Tan. Lee responded that Tan was on vacation so Plaintiff should be patient and call Lee the following Monday.[25]

18.     Plaintiff alleges that the following Monday, Plaintiff called Lee and Lee told him to be patient, that Lee needed to speak with Tan further, and that Plaintiff should "maybe call him back in a week or so."[26]

19.     After November 8, 2013, UAW-LETC invited Plaintiff to attend a holiday party in California on December 19, 2013, at UAW-LETC's expense. Plaintiff alleges that he spoke with Lee on the phone before the holiday party and stated that his intent in coming to the party was to have "one-on-one" time with Lee.  Lee allegedly responded, "I will make time for you."[27]

20.     At the holiday party on December 19, 2013, Plaintiff sat at the same table as Lee, but someone was sitting between them, and with Plaintiff's "hearing being what it is and with the noise of the group," Plaintiff "could not discuss anything with Mr. Lee at the table." Plaintiff asked Lee to meet with him, and Lee told Plaintiff to meet him at UAW-LETC's office after the party. Plaintiff was "delayed a few minutes" in reading UAW-LETC's office, and when he arrived, Lee had already left.[28]

## STANDARD FOR SUMMARY JUDGMENT

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[29] When analyzing a motion for summary judgment, the court must "view the evidence and draw

---

[25] Motion at 10; Opposition at 24 (undisputed).

[26] *Id.* (undisputed).

[27] *Id.* (undisputed).

[28] Motion at 10; Opposition at 24–25 (undisputed).

[29] Fed. R. Civ. P. 56(a).

all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment."[30] However, "the nonmoving party must present more than a scintilla of evidence in favor of his position."[31] A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[32]

## DISCUSSION

### 1.  Mr. Brenner's Retaliation Claim Fails

"A prima facie case of retaliation requires the plaintiff to show that (1) he or she engaged in protected opposition to discrimination, (2) a reasonable employee would have considered the challenged employment action materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action."[33] "Although no magic words are required, to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by the ADEA. General complaints about company management and one's own negative performance evaluation will not suffice."[34] Further, "a vague reference to discrimination and harassment without any indication that this misconduct was motivated by [age] . . . does not constitute protected activity and will not support a retaliation claim."[35]

Defendant argues that it is entitled to summary judgment on the retaliation claim because the first element of the claim—engaging in protected opposition to age discrimination—is not

---

[30] *Mathews v. Denver Newspaper Agency LLP*, 649 F.3d 1199, 1204 (10th Cir. 2011) (citation and internal quotations omitted).

[31] *Ford v. Pryor*, 552 F.3d 1174, 1178 (10th Cir. 2008) (citations omitted).

[32] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Kerber v. Qwest Group Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011).

[33] *Hinds v. Sprint/United Mgmt. Co.,* 523 F.3d 1187, 1202 (10th Cir. 2008).

[34] *Id.*

[35] *Anderson v. Acad. Sch. Dist. 20*, 122 F. App'x 912, 916 (10th Cir. 2004) (unpublished).

satisfied. Specifically, Defendant contends that "Plaintiff's alleged expressions of disagreement with Lee's management decisions do not constitute 'protected opposition' under the ADEA."[36] In response, Mr. Brenner argues that the first element has been met or, at least, triable issues of fact exist as to this element.[37] Mr. Brenner points out that "[o]n August 28 and August 29, 2013, Brenner voiced and raised specific concerns (complaints) about and in opposition to his being removed 'because of his age' which was the subject of investigation.[38] According to Mr. Brenner, his "opposition, protests and participation in what UAW-LETC characterizes an 'investigation' on August 28, 2013 were met with adverse action, hostility and anger by Lee. Brenner was excluded; demoted; his authority taken away; replaced; suspended; and later terminated."[39] Mr. Brenner lists the following as his specific complaints: "his being excluded from the meeting, his authority being taken away, and his objections about his being suspended and sent home by Lee."[40]

None of Mr. Brenner's complaints allege discrimination based on age. This is further evidenced by Mr. Brenner's deposition, where he was asked to identify the objections he made that would constitute protected opposition to age discrimination—and therefore protected activity—Mr. Brenner stated:

> Q.  What acts did you engage in that you felt that Bruce Lee was retaliating against you for?
>
> A.  For expressing my concerns. In other words, what I think he would call complaining about this – the way I was being treated.

---

[36] Motion at 12.

[37] Opposition at 28.

[38] *Id.*

[39] *Id.* at 28–29.

[40] *See* Undisputed Facts ¶ 9.

Q.  What did you tell Mr. Lee about the way you were being treated that you think he retaliated against you for saying?

A.  I think that it was wrong for him to have left me out of the staff meeting, for him to send me home, that I – some of the items that he claimed were brought up during the staff meeting when he mentioned it.  I tried to explain, the way he cut me short on it, cut me short and didn't allow me to explain. Just basically accepted what anybody said. Although, when he came back, he said that it's all minor things. Don't worry about it, Harvey, quote/unquote. But yet, he seemed to hold it against me.

Q.  Did you express those concerns to him during the same conversation where he was angry with you for asking Lisa Johnson what had occurred at the staff meeting?

A.  He said that that was the reason he was sending me home. So I quoted him as saying this, but it appeared to me that the actual reason he was sending me home was because retaliating against my complaints.

. . .

Q. Was there any other conduct that you engaged in that you believe that Mr. Lee retaliated against you for?

. . .

A.  Well, primarily for expressing my concerns and disagreeing with him on some items about how this program was run or just – I can make a story out of this, but . . . .[41]

Again, none of Mr. Brenner's complaints mention or implicate age discrimination or any other protected criterion. Mr. Brenner even concedes that when he raised his complaints he "did not use the words 'discrimination' or 'age' . . . ."[42] According to Mr. Brenner, "it was understood, that discrimination based on Brenner's age was self-evident and the central issue in play particularly in light of the written attacks that Brenner not remain in his position 'because of his age.'"[43] What might have been "understood" or "self-evident" does not constitute protected

---

[41] Harvard S. Brenner Deposition at 186:17-25, 187:1-15, 188:2-3, 7-9, attached as Exhibit A in Appendix to Evidence, docket no. 32-1, filed September 30, 2015.

[42] Opposition at 29.

[43] *Id.* at 13.

opposition for a prima facie case of retaliation. Mr. Brenner conveyed his concerns in general terms and without alluding to age or age discrimination. This is insufficient to amount to protected activity. Accordingly, Mr. Brenner has failed to provide any evidence that he engaged in protected activity and has failed to show a genuine dispute of material fact as to this element of his prima facie case. Thus, summary judgment is appropriate on this claim.

## 2. Mr. Brenner's Breach of Contract Based on Alleged Promise of Lifetime Employment Fails

"Utah law presumes that an employment arrangement that does not have a specified term of duration is at-will."[44] "An at-will employment arrangement allows either the employer or the employee to terminate the employment for any reason, or no reason at all, at any time; moreover, the employer may 'do so without extending any procedural safeguards to an employee, except as required by law.'"[45] However, "[a]n employee may overcome that presumption by showing [, among other things,] that (i) an express or implied employment agreement existed that prohibited an employer from terminating an employee without cause or without satisfying other agreed-upon conditions[.]"[46] Mr. Brenner is attempting to overcome the at-will presumption by arguing that Defendant breached an express and implied contract.

### a. Mr. Brenner's express contract claim fails as a matter of law

Mr. Brenner fails to articulate an argument for his belief that he has an express contract with Defendant. In a single sentence, he makes a conclusory statement that he has an express written contract and then proceeds to provide record cites without any analysis. Mr. Brenner states:

---

[44] *Ryan v. Dan's Food Stores, Inc.,* 972 P.2d 395, 400 (Utah 1998).

[45] *Id.*

[46] *Id.*

Brenner also had contracts, promises and assurances with an express written and third-party beneficiary contract as a "Key Employee" as set forth and evidenced by the Award/Contract, between the U.S. Department of Labor and UAW-LETC dated June 1, 2013, which continued for five years through to June 2018, and included the covenants and agreements that there be no discrimination including on the basis of age. (Facts u. -w., Ex. 1, Brenner Decl., ¶¶ 19-22, Ex. 3, Brenner Depo., 75:16-24, 76:19-25-77:1-2, 78:14-22, 81:20-25-82:1-5, 86:16-25-87:1-25, 93:9-16, 94:6-25-95:1-7, 96:2-14, 98:3-25, 99:25-100:1-23, 102:14-21, 103:19-25; 104:1-24; Ex. 5, p. 6).[47]

Mr. Brenner's deposition sheds some light as to the reason for his belief that he has an express contract with Defendant. Mr. Brenner stated during his deposition:

And in addition to that, in our contract with the Department of Labor, I'm listed as a key employee, which UAW-LETC is required to notify the Department of Labor if I am removed from that position, which also tends to tell me that I just can't be removed from that position on a whim. There should be some just cause or some -- at least some good reason for doing so that could be told to the Department of Labor.[48]

Mr. Brenner's cited records do not support his argument that he is a third-party beneficiary of Defendant's contract with the U.S. Department of Labor ("DOL Contract"). The provision in the DOL Contract that Mr. Brenner relies on is section H.8 KEY PERSONNEL. That section provides, in relevant part:

The personnel specified below or in attachment to this contract are considered to be essential to the work being performed hereunder. Prior to diverting any of the specified individuals to other programs, the Contractor shall notify the Contracting Officer reasonably in advance and shall submit justification (including proposed substitutions) in sufficient detail to permit evaluation of the impact on the program. No diversion shall be made by the Contractor without the written consent of the Contracting Officer; Provided, that the Contracting Officer may ratify in writing such diversion and such ratification shall constitute the consent of the Contracting Officer required by this clause. The below list or attachment to this contract may be amended from time to time during the course of the contract to either add or delete personnel, as appropriate.[49]

---

[47] Opposition at 33.

[48] Harvard S. Brenner Deposition at 93:9-16, exhibit 3, docket no. 39-4, filed November 6, 2015.

[49] Contract at H-3, exhibit 5, docket no. 39-6, filed November 6, 2015.

"Whether a third-party beneficiary status exists is determined by examining a written contract. The issue can be decided on summary judgment as a question of law . . . ."[50] "Third-party beneficiaries are 'persons who are recognized as having enforceable rights created in them by a contract to which they are not parties and for which they give no consideration.'"[51] "For a third party to have enforceable rights under a contract, 'the intention of the contracting parties to confer a *separate and distinct benefit* upon the third party must be clear.'"[52] "Accordingly, a party only incidentally benefited has no right to recover under the contract."[53] The Utah Supreme Court has stated that "'[i]t is not enough that the parties to the contract know, expect or even intend that others will benefit from the [contract] . . . . The contract must be undertaken for the plaintiff's direct benefit and the contract itself must affirmatively make this intention clear.'"[54]

As Defendant correctly points out, Mr. Brenner "fails to identify any language in the DOL Contract which affirmatively makes clear, or even implies, that the DOL Contract was 'undertaken for the plaintiff's direct benefit.'"[55] Even though the DOL Contract requires that a Contracting Officer be notified if key personnel are diverted to other programs, this does not demonstrate that the contracting parties intended "to confer a separate and distinct benefit upon" Mr. Brenner. Mr. Brenner's bare assertions, without any supporting facts or legal authority, are insufficient to create an enforceable third-party beneficiary right under the DOL Contract. Accordingly, the third-party beneficiary contract claim fails as a matter of law.

---

[50] *Am. Towers Owners Ass'n, Inc. v. CCI Mech., Inc.*, 930 P.2d 1182, 1188 (Utah 1996) *abrogated on other grounds by Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 221 P.3d 234 (Utah 2009).

[51] *SME Industries, Inc. v. Thompson, Ventulett, Stainback & Associates, Inc.,* 28 P.3d 669, 684 (Utah 2001) (quoting *Rio Algom Corp. v. Jimco Ltd.,* 618 P.2d 497, 506 (Utah 1980)).

[52] *Id.*

[53] *Id.*

[54] *Id.* (quoting *Am. Towers Owners Ass'n, Inc.*, 930 P.2d at 1188).

[55] Reply at 35.

b. *Mr. Brenner's implied contract claim fails as a matter of law*

Mr. Brenner's implied contract claim also fails on the merits because there is no dispute that Mr. Brenner signed multiple policy manuals which superseded any alleged remarks or promises made by Mr. Lee or any other employee of Defendant regarding life time employment.[56] Defendant argues that even if Mr. Brenner's presumptive at-will relationship was modified by certain remarks or promises made to him regarding life time employment, this implied condition of employment contrary to at-will status was later affected by a subsequent modification when Mr. Brenner signed the policy manuals in 1995, 1997 and 2000. According to Defendant, these policy manuals clearly stated that employment with the company was on an at-will basis, and did not qualify this statement with any exception.[57]

Mr. Brenner, in his opposition, focuses his arguments on whether an implied contract regarding life time employment existed, and only addresses Defendant's argument—that the policy manuals supersede Mr. Brenner's alleged implied contract—in a footnote.[58] The footnote reads:

> To the extent UAW-LETC is or may somehow be arguing that Brenner's employment contract was modified subsequently with Employment Manuals, Brenner objects and disputes because such a position violates the pre-existing duty rule as no consideration was given for any modification of the contract and the modification therefore is voidable. Restatement (Second) of Contracts § 73 (1979). Moreover, Brenner disputes that any "at-will" in any of the Employment Manuals applied to him, his job position and/or his circumstances as he had express and/or implied contracts and promises to the contrary and did reasonably understand and agree that he was not at-will. UAW-LETC's position contradicts the evidence, Ex. 1, Brenner Decl., ¶¶ 19-21, Ex. 3, Brenner Depo., 75:16-24, 76:19-25-77:1-2, 78:14-22, 81:20-25-82:1-5, 86:16-25-87:1-25, 93:9-16, 94:6-25-

---

[56] *See* Undisputed facts ¶¶ 13–15.

[57] Motion at 18–19.

[58] Opposition at 32.

14

95:1-7, 96:2-14, 98:3-25, 99:25-100:1-23, 102:14-21, 103:19-25;104:1-24, 191:16-20.[59]

Even assuming that an implied contract for life time employment was created—thus modifying Mr. Brenner's at-will status—Defendant is correct that this implied contract was subsequently modified when Mr. Brenner signed the policy manuals which stated employment with the company was on an at-will basis. In support, Defendant cites Utah cases directly on point with the factual scenario presented in this case.[60] For example, in *Ryan v. Dan's Food Stores, Inc.*,[61] Ryan argued that Ted. D. Gardiner, the president of Dan's, "created an express or implied-in-fact employment contract when he told Ryan that Dan's would not reprimand him for following the law."[62] The Utah Supreme Court concluded "that even if Gardiner's statement that Dan's would not terminate Ryan for following the law created an express or implied contract, as a matter of contract law, Ryan's receipt of the Dan's employee handbook and his signing of the acknowledgment form modified and superseded any previous conditions of that contract."[63] In *Ryan*, the Utah Supreme Court adopted the reasoning of the Utah Court of Appeals in *Trembly v. Mrs. Fields Cookies.*[64] The Utah Supreme Court summarized the *Trembly* case as follows:

> In *Trembly,* an employee claimed that a supervisor's verbal statements created an implied-in-fact employment contract requiring certain disciplinary procedures before termination. The court of appeals found the supervisor's statements were not controlling because even if those statements were sufficient to operate as a contract provision, the employee received an employee handbook specifying that all employment was at-will, *after* the supervisor made the verbal representations about a progressive discipline policy. The court of appeals stated that "if an employee has knowledge of a distributed handbook that changes a condition of

---

[59] *Id.* at 31, n. 4.

[60] Motion at 18.

[61] 972 P.2d 395 (Utah 1998).

[62] *Id.* at 400.

[63] *Id.* at 401.

[64] 884 P.2d 1306 (Utah Ct. App. 1994).

the employee's employment, and the employee remains in the company's employ, the modified conditions become part of the employee's employment contract."[65]

Similarly, the facts of this case reveal that Mr. Brenner received the policy manual after the alleged statements were made to him regarding life time employment.[66] The most recent policy manual that Mr. Brenner signed clearly states: "Employment with this company is on an 'at-will' basis. This means that either the employee or the company may terminate the employment relationship at any time for any reason, with or without cause."[67] Mr. Brenner signed the policy manual on November 14, 2000, acknowledging that he has read and understands the information contained in the manual.[68] Mr. Brenner did not strike out any provision of the policy manual or ask anyone to clarify whether the at-will provision applied to him. Mr. Brenner simply signed the policy manuals without question. Now with the benefit of hindsight, Mr. Brenner argues, somewhat incoherently that he "disputes that any 'at-will' in any of the Employment manuals applied to him, his job position and/or his circumstances as he had express and/or implied contracts and promises to the contrary and did reasonably understand and agree that he was not at-will."[69] Without more explanation, this argument fails.

Mr. Brenner's argument that such a modification "violates the pre-existing duty rule as no consideration was given for any modification of the contract" is meritless given the clear

---

[65] *Ryan,* 972 P.2d at 401 (citing *Trembly,* 884 P.2d at 1312).

[66] Mr. Brenner points to a single remark that was allegedly made after he signed the 2000 policy manual. Mr. Brenner contends that his "express oral and/or implied employment contracts were confirmed again in early 2013 when Lee stated to Brenner: 'You Harvey can work as long as you want to.'" Opposition at 32. This remark does not establish an implied contract, which requires, among other things, that the remark be sufficiently definite to act as a contract provision. *See Hodgson v. Bunzi Utah, Inc.*, 844 P.2d 331, 334 (Utah 1992). At best, this statement is a general assurance of continued employment. "[G]eneral assurances of an ongoing working relationship are not sufficiently definite so as to rebut the at-will presumption." *Evans v. GTE Health Systems Inc.,* 857 P.2d 974 (Utah Ct. App. 1993).

[67] Policy Manual at 3, attached as Exhibit A in Appendix to Evidence, docket no. 32-1, filed September 30, 2015.

[68] *Id.*

[69] Opposition at 31, n. 4.

language to the contrary in the cases cited by Defendant. Both *Ryan* and *Trembly* cite to the Utah

Supreme Court's decision in *Johnson v. Morton Thiokol, Inc.*,[70] where the Court stated:

> In the case of unilateral contract for employment, where an at-will employee
> retains employment with knowledge of new or changed conditions, the new or
> changed conditions may become a contractual obligation. In this manner, an
> original employment contract may be modified or replaced by a subsequent
> unilateral contract. The employee's retention of employment constitutes
> acceptance of the offer of a unilateral contract; by continuing to stay on the job,
> although free to leave, *the employment supplies the necessary consideration for
> the offer.*[71]

Applying the *Johnson* reasoning, the Utah Court of Appeals in *Trembly* concluded:

> Thus, even if Dorin's oral assertions to Trembly modified his at-will status with
> Mrs. Fields, the handbook clearly superseded and replaced that agreement. In the
> handbook, Mrs. Fields unequivocally reserved its at-will employer status and the
> right to terminate an employee at any time with or without cause. Trembly
> testified that he was familiar with this at-will language. Therefore, Trembly could
> not have reasonably concluded, after distribution of the handbook, that his
> employment was other than at-will on the basis of Dorin's statements. Mrs. Fields
> eliminated any confusion regarding employment status by the clear and
> conspicuous disclaimers contained in the handbook, which was distributed *after*
> Dorin made his comments to Trembly. *Trembly retained his employment with
> Mrs. Fields with full knowledge of the modified condition of his employment and
> his retention constituted his acceptance of Mrs. Fields's offer: to remain
> employed at Mrs. Fields as an at-will employee.*[72]

The conclusion reached in *Trembly* applies equally here as well. The policy manual

clearly stated that employment with Defendant was on an at-will basis. Mr. Brenner signed this

policy manual *after* the alleged comments or promises he received from Mr. Lee or anyone else.

Mr. Brenner has not disputed that he was aware of the at-will provision in the manual. Whether

Mr. Brenner believed that the provision did not apply to him is irrelevant because he signed the

policy manual without voicing any concerns with the provision and he continued to work for

Defendant. Accordingly, Mr. Brenner's "receipt and acknowledgment of the [manual], which

---

[70] 818 P.2d 997 (Utah 1991).

[71] *Id.* at 1002 (emphasis added) (quoting *Pine River State Bank v. Mettille*, 333 N.W.2d 622, 627 (Minn. 1983)).

[72] *Trembly*, 884 P.2d at 1313 (emphasis added).

notified him of his at-will status, revoked any express or implied contractual conditions contradictory to the [manual], such as a condition altering [Mr. Brenner's] at-will status."[73]

### 3. Mr. Brenner's Breach of the Contract based on a Promise to Meet Face to Face Fails

Mr. Brenner contends that Mr. Lee, on November 8, 2013, "promised to discuss with Brenner other positions which Brenner could do within UAW-LETC."[74] According to Mr. Brenner, Defendant "through Lee, represented, promised and agreed definitely that UAW-LETC through LEE would have a follow-up face-to-face, one-on-one meeting with Brenner for the stated purpose of finding a UAW-LETC position for Brenner to work in."[75] Mr. Brenner believes that this promise created a binding contract which was later breached. Mr. Brenner states that "instead of honoring his promises and agreements with Brenner, Lee and UAW-LETC, in a deceitful and stonewalling manner, breached their promises and agreements by not meeting one-on-one with Brenner to discuss face-to-face any position, including as had been represented, promised and agreed."[76] Mr. Brenner's position that a promise to meet face-to-face to discuss other positions with the company created a binding contract is meritless.

"A binding contract can exist only where there has been mutual assent by the parties manifesting their intention to be bound by its terms. Furthermore, a contract can be enforced by the courts only if the obligations of the parties are set forth with sufficient definiteness that it can

---

[73] *Ryan,* 972 P.2d at 402.

[74] Opposition at 25.

[75] *Id.*

[76] *Id.*

be performed."[77] "[W]here a contract is so uncertain and indefinite that the intention of the parties in material particulars cannot be ascertained, the contract is void and unenforceable."[78]

The alleged promise to meet face-to-face to discuss other positions is too vague and indefinite to support an enforceable contract. If the promise was made, then at most the parties agreed to nothing more than to meet and negotiate sometime in the future. This does not create an enforceable contract term. Based upon the uncontested and contested material facts, viewed in the light most favorable to Mr. Brenner, the broad, indefinite promise only creates an agreement to negotiate in the future, which is unenforceable as a matter of law.

### 4. Mr. Brenner's Breach of the Implied Covenant of Good Faith and Fair Dealing Claim Fails

Since Mr. Brenner's implied and expressed contract claims, discussed above, fail as a matter of law, he is also barred from asserting a claim for the breach of the implied covenant of good faith and fair dealing.[79]

### 5. Punitive and Compensatory Damages are Unavailable under the ADEA

Defendant contends that it is entitled to summary judgment on Mr. Brenner's claims for punitive and compensatory damages for pain and suffering and emotional distress, "because these types of damages are unavailable as a matter of law under the ADEA."[80]

---

[77] *Bunnell v. Bills*, 368 P.2d 597, 600 (Utah 1962).

[78] *Stangl v. Todd,* 554 P.2d 1316, 1319 (Utah 1976); *see also Utah Golf Ass'n v. City of N. Salt Lake*, 79 P.3d 919, 921 (Utah 2003) ("An unenforceable agreement to agree occurs when parties to a contract fail to agree *on material terms* of the contract 'with sufficient definiteness to be enforced.'" (emphasis added) (quoting *Cottonwood Mall Co. v. Sine*, 767 P.2d 499, 502 (Utah 1988))).

[79] *See, e.g.,* P*eterson & Simpson v. IHC Servs., Inc.,* 2009 UT 54, ¶ 21, 217 P.3d 716 ("The duties of a good faith and fair deal arise out of the relationship between the parties created by the contract and have no independent existence outside of the contract[.]"); *Craner v. Nw. Mutual Life,* 12 F.Supp.2d 1234, 1242 (D. Utah 1998) ("Where there is no breach of an express covenant in a contract, there can be no cause of action for breach of an implied covenant arising therefrom."); *Strupat v. Aurora Loan Servs., LLC,* No. 2:11–cv–279, 2011 WL 2359842, at *4 (D.Utah Jun. 9, 2011) ("Absent a contract, there can be no breach of any implied duty."). *See also Rio Algom Corp. v. Jimco Ltd.,* 618 P .2d 497, 505 (Utah 1980) ("A duty of good faith does not mean that a party vested with a clear right is obligated to exercise that right to its own detriment for the purpose of benefiting another party to the contract. A court will not enforce asserted rights that are not supported by the contract itself.").

In his Opposition, it is unclear whether Mr. Brenner disputes that punitive damages are available under the ADEA. Next to the issue heading "Punitive Damages Under ADEA," he writes "DISPUTED."[81] However, Mr. Brenner's argument that follows the issue heading reads in full:

> Liquidated damages are recoverable in *ADEA* cases, 29 U.S.C. § 626(b), usually in an amount equal to lost wages, particularly where there is willful discrimination and/or retaliation, a question for the jury. The United States Supreme Court has ruled that a violation of the *Fair Labor Standards Act of 1938* ("*FLSA*"), 29 U.S.C. § 201, et seq., is "willful" where an employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the Act."[82] As demonstrated, UAW-LETC engaged in acts and omissions which were "willful" which it "knew or showed reckless disregard for the matter of whether its conduct was prohibited".

Mr. Brenner's argument does not dispute that punitive damages are unavailable under the ADEA. He simply argues that liquidated damages are available. The Tenth Circuit has found that punitive damages are unavailable under the ADEA.[83]

As for recovery of compensatory damages for pain and suffering and emotional distress, Mr. Brenner's response states, in its entirety: "While compensatory damages are generally not recoverable in ADEA, such damages may be allowed under state law and based on the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, 215(a)(3) which is incorporated in the ADEA at 29 U.S.C. § 626(b)."[84] In support, Mr. Brenner cites to *Wise v. Olan Mills Incorporated of Texas*,[85] and *Kennedy v. Mountain States Telephone & Telegraph Co.*[86] Both of these decisions are from the federal district court in Colorado and were issued before the Tenth

---

[80] Motion at 23.

[81] Opposition at 35.

[82] *Id.* (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988)).

[83] *See Bruno v. W. Elec. Co.*, 829 F.2d 957, 966 (10th Cir. 1987).

[84] Opposition at 34–35.

[85] 485 F. Supp. 542 (D. Colo. 1980).

[86] 449 F. Supp. 1008 (D. Colo. 1978).

Circuit held in *Perrell v. FinanceAmerica Corp.*[87] that compensatory damages are not recoverable under the ADEA because the statute's remedy provisions do not authorize such damages.[88] Also, every other circuit which has addressed this issue has held that damages under the ADEA are limited to those specifically enumerated and that no damages are recoverable for pain and suffering.[89]

Accordingly, punitive and compensatory damages for pain and suffering and emotional distress are unavailable under the ADEA, and Defendant is granted summary judgment on these issues.

## CONCLUSION

IT IS HEREBY ORDERED that Defendant's motion[90] for partial summary judgment is GRANTED.

Dated December 28, 2015.

BY THE COURT:

David Nuffer
United States District Judge

---

[87] 726 F.2d 654 (10th Cir. 1984).

[88] *Id.* at 657.

[89] *See id.* (cases cited).

[90] Defendant UAW-LETC's Motion for Partial Summary Judgment; Memorandum of Points and Authorities in Support thereof ("Motion"), docket no. 31, filed September 30, 2015.